# EXHIBIT I

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 21-1805

———————

STEVEN C. JEMISON, an individual,

Appellant

v.

MICHAEL S. JEMISON, in his capacity as trustee for the Jemison Family Trust and in his capacity as president and co-chairman of the board of directors of JJKL, Inc., f/k/a Heyco, Inc.; WILLIAM D. JEMISON, in his capacity as trustee for the Jemison Family Trust and in his capacity as co-chairman of the board of directors of JJKL, Inc. f/k/a Heyco, Inc.

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-17-cv-13571)
District Judge: Honorable Freda L. Wolfson

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 1, 2022

Before:  McKEE, AMBRO, and SMITH, <u>Circuit Judges</u>

**<u>JUDGMENT</u>**

This cause came on to be heard on the record before the United States District Court for the District of New Jersey and was submitted under Third Circuit L.A.R. 34.1(a) on March 1, 2022.

On consideration whereof, IT IS **ORDERED** AND **ADJUDGED** by this Court that the judgment of the District Court entered March 29, 2021, is hereby **affirmed** in

part, **reversed** in part, and **remanded** to the District Court for further proceedings.  Each side to pay its own costs.

All of the above in accordance with the opinion of this Court.

ATTEST:

s/ Patricia S. Dodszuweit
Clerk

Dated: July 1, 2022

**Certified as a true copy and issued in lieu of a formal mandate on** _07/25/2022_

**Teste:** _Patricia A Dodszuweit_
**Clerk, U.S. Court of Appeals for the Third Circuit**

2

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 21-1805

———————

STEVEN C. JEMISON, an individual,

Appellant

v.

MICHAEL S. JEMISON, in his capacity as trustee for the Jemison Family Trust and in his capacity as president and co-chairman of the board of directors of JJKL, Inc., f/k/a Heyco, Inc.; WILLIAM D. JEMISON, in his capacity as trustee for the Jemison Family Trust and in his capacity as co-chairman of the board of directors of JJKL, Inc. f/k/a Heyco, Inc.

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-17-cv-13571)
District Judge: Honorable Freda L. Wolfson

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 1, 2022

Before:  McKEE, AMBRO, and SMITH, <u>Circuit Judges</u>

(Opinion filed: July 1, 2022)

---

OPINION[*]

---

**AMBRO**, <u>Circuit Judge</u>

Business (meaning money) can degrade many a relationship. When those relationships are familial, the fraying of bonds is particularly personal. This appeal is one such story. Steven Jemison—a shareholder of JJKL, Inc. f/k/a Heyco, Inc. ("Heyco" or the "Company") and co-trustee and beneficiary of the Jemison Family Trust—challenges the District Court's grant of summary judgment for his brothers, William and Michael Jemison, in their capacities as co-chairmen of Heyco's Board of Directors (the "Board") and as trustees of the Jemison Trust.[1]

On appeal, Steven argues his brothers breached their fiduciary duties as corporate directors and trustees and were unjustly enriched in connection with three transactions: (1) Heyco's issuance and subsequent forgiveness of $500,000 loans to William and Michael; (2) commission payments to William and Michael stemming from the sale of a Heyco subsidiary, Heyco Products, Inc. ("Products"); and (3) the sale of another Heyco subsidiary, Heyco Metals, Inc. ("Metals"), to Hummock Holdings, a company owned by Michael and his children.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

2

We affirm the judgment of the District Court as to the corporate director and unjust enrichment claims, as well as the trustee claims relating to the loans and commissions.  But though the Court took an intuitive and practical approach to Steven's trustee claims stemming from the Metals sale, New Jersey trust law requires a different tack.  Hence we must reverse its judgment on that issue and remand for further proceedings.

## I.

The Jemison Trust was formed by the parties' father, who served as the initial trustee.  The brothers, along with their sister Susan Jemison (a non-party), are beneficiaries of and hold equal interests in the Trust's assets.  After their father's death, while retaining their status as beneficiaries, the siblings became co-trustees of the Trust.  The Trust's primary asset is a majority of the voting shares of Heyco, a holding company co-founded by the siblings' grandfather.  Heyco had two wholly owned subsidiaries: Products and Metals.  Metals manufactured rolled-strip products from copper and copper alloys, mainly for the electronic connector market.  Products made electrical connectors from raw materials supplied by Metals and other sources.

Heyco's Board, which held annual board meetings, had four members: William, Michael, Hank Klumpp, and Harry Largey.  William had worked for Products since 1981 and was its president.  Michael, in turn, had worked for Metals since 1979 and was the president of that subsidiary.  Both brothers had been longtime members of Heyco's Board.  Steven and Susan did not serve on the Board.

Steven first challenges the issuance and later forgiveness of $500,000 loans by Heyco to William and Michael separately.  The loans required them to repay with interest in yearly $50,000 instalments; but the loans were, at the Board's annual meetings between 2012 and 2015, incrementally forgiven by the Company, purportedly as a form of director compensation.  Heyco consistently issued dividends to shareholders during the years it forgave the loans.

Steven also challenges commission payments from the Company to his brothers in connection with the 2016 sale of Products to Penn Engineering for $130 million.  That sale price exceeded 2013 and 2015 valuations of the subsidiary by investment banking firm Dunn Rush & Co. of between $80 and $100 million and between $100 and $120 million, respectively.  After the 2015 valuation, the Board decided to explore selling both Products and Metals.  It also issued a Unanimous Written Consent stipulating that senior management should receive a bonus from potential sales of either entity, as "the expectation of large values for [Products] and [Metals] [was] due to management's sustaining and increasing gross margins, mitigating overhead and innovating into new product lines while never failing to pay a dividend or decreasing the dividend paid over that paid in the preceding year."  App. at 6.  Accordingly, the Consent provided that William and Michael would together receive a total closing bonus of 7.5% of the net proceeds from the sale of either subsidiary.[2]  Directors Klumpp and Largey would each

---

[2] William and Michael would split the 7.5% commission among themselves depending on which subsidiary sold.  In a sale of Products, William, as its head, would receive 80%, and Michael 20%, of the commission; conversely, Michael would receive 80%, and William 20%, of the commission in a sale of Metals.

receive commissions of .68% of any sale.  Although Steven objected, the sale to Penn

Engineering was approved by William, Michael, and Susan on behalf of the Jemison

Trust.  Heyco's other shareholders also voted in favor of the sale.  William and Michael

received commissions of $7.8 million and $1.95 million, respectively; Klumpp and

Largey each received a commission of around $884,000.

Steven further challenges the sale of Metals to Hummock, an entity owned by

Michael and his children, for $17.65 million.  Between 2015 and 2016, Heyco discussed

selling the subsidiary with three potential suitors and explored the feasibility of an

Employee Stock Ownership Plan ("ESOP").  After these options fell through, Michael,

through Hummock, made an offer of $15 million, which was rejected.  Accepted,

however, was his subsequent offer of $17.65 million.  The Board—minus Michael, who

had recused himself from the vote—unanimously approved the sale.  Although entitled to

commissions per the 2015 Unanimous Written Consent, the directors waived them for the

sale.  As with the sale of Products, Michael, William, and Susan, without Steven's

consent, voted the Trust's shares to approve.  Heyco's other shareholders likewise

approved.

The parties contest whether the sale price of $17.65 million reflected Metals' true

value.  Steven's expert posited the subsidiary was worth about $54 million.  William and

Michael, on the other hand, pointed to valuations contemporaneous to the sale, including

two 2016 valuations of between $18 million and $21 million (using the subsidiary's

projected 2016 earnings), and between $11.5 million and $14 million (using Metals'

complete financial data for 2013 to 2015), in connection with the potential ESOP

transaction.  They also alleged that, during Steven's 2016 divorce proceedings, Metals was valued by Steven and his ex-wife at negative $31.8 million and positive $12.3 million, respectively (facts which Steven disputes).

Following the sale of Metals, Steven sued his brothers, alleging they violated their fiduciary duties as corporate directors and trustees and were unjustly enriched at his expense.  The District Court granted summary judgment for William and Michael on all counts.  Steven now appeals.

## II.

We review motions for summary judgment anew, or *de novo*, applying the same standard as the District Court applied to determine whether summary judgment was appropriate.  *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).  We thus give "the non-moving party[] the benefit of every favorable inference that can be drawn from the record to determine if there are any remaining genuine issues of material fact that would enable [it] to prevail."  *Robertson v. Cent. Jersey Bank & Tr. Co.*, 47 F.3d 1268, 1273 (3d Cir. 1995).  Summary judgment is appropriate only if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Norfolk*, 512 F.3d at 91 (quoting Fed. R. Civ. P. 56(c)).

## III.

We first consider Steven's claims that William and Michael breached their fiduciary duties of loyalty and care as corporate directors.  The New Jersey Business Corporation Act ("NJBCA") requires corporate directors to "discharge their duties in

6

good faith and with that degree of diligence, care and skill which ordinarily prudent people would exercise under similar circumstances." N.J. Stat. Ann. § 14A:6-14(1). New Jersey courts rely on the business judgment rule to "protect[] a board of directors from being questioned or second-guessed on conduct of corporate affairs except in instances of fraud, self-dealing, or unconscionable conduct." *Maul v. Kirkman*, 637 A.2d 928, 937 (N.J. Super. Ct. App. Div. 1994). The rule provides that "[a] decision made by a board of directors pertaining to the manner in which corporate affairs are to be conducted should not be tampered with by the judiciary so long as the decision is one within the power delegated to the directors and there is no showing of bad faith." *In re PSE&G S'holder Litig.*, 801 A.2d 295, 306 (N.J. 2002).

The rule is in effect "a rebuttable presumption" that "places an initial burden on the person who challenges a corporate decision to demonstrate the decision-maker's 'self-dealing or other disabling factor.'" *Id.* (quoting *Maul*, 637 A.2d at 937). "If a challenger sustains that initial burden, then the presumption of the rule is rebutted, and the burden of proof shifts to the defendant or defendants to show that the transaction was, in fact, fair to the corporation." *Id.* at 306–07 (cleaned up). To determine whether the business judgment rule applies, courts ask "(1) whether the actions were authorized by statute or by charter, and if so, (2) whether the action is fraudulent, self-dealing or unconscionable." *Seidman v. Clifton Sav. Bank, S.L.A.*, 14 A.3d 36, 52 (N.J. 2011) (quoting *Green Party of N.J. v. Hartz Mountain Indus. Inc.*, 752 A.2d 315, 326 (N.J. 2000)).

A.

7

Steven first asserts his brothers breached their fiduciary duties of loyalty and care as corporate directors of Heyco by (1) issuing and later forgiving the $500,000 loan to each of them, and (2) authorizing their commissions in connection with the sale of Heyco Products. The District Court determined the business judgment rule insulated William and Michael's decisions on these transactions. We agree.[3]

We start with whether these transactions were breaches of the duty of loyalty. The NJBCA provides that "[t]he board, by the affirmative vote of a majority of directors in office and irrespective of any personal interest of any of them, shall have authority to establish reasonable compensation of directors for services to the corporation as directors, officers, or otherwise." N.J. Stat. Ann. § 14A:6-8(3). It also permits a corporation to "lend money to, or guarantee any obligation of, or otherwise assist, any director, officer or employee of the corporation or of any subsidiary, whenever, in the judgment of the directors, such loan, guarantee or assistance may reasonably be expected to benefit the corporation." *Id.* § 14A:6-11. Corporations are given wide leeway to set the terms for such loans, which "may be made with or without interest, and may be unsecured, or secured in such manner as the board shall approve, . . . and may be made upon such other terms and conditions as the board may determine." *Id.*

---

[3] As this is a breach of fiduciary duty, we would expect these corporate law claims to be brought as derivative actions. *Strasenburg v. Staubmuller*, 683 A.2d 818, 829–30 (N.J. 1996) ("Claims of breach of a fiduciary duty on the part of the directors will also be generally regarded as derivative claims unless the injury to shares is distinct."). But because William and Michael fail to challenge that here, we will assume the claims are properly brought as individual claims.

Because the NJBCA authorized Heyco's Board to set director compensation and issue loans to its directors, Steven bears the burden to rebut the presumption that these transactions fall within the scope of the Board's business judgment. He contends the business judgment rule does not apply because the transactions were "clearly self-interested." Op. Br. at 13. But the NJBCA explicitly states that a director approving his own compensation is *not* a conflict of interest, *id*. § 14A:6-8(3), and grants boards the discretion to lend money to directors, *id.* § 14A:6-11. And the transactions were approved by Klumpp and Largey, Heyco's two disinterested directors, thereby cleansing any potential conflict of interest. *See id.* § 14A:6-8(1)(b) (permitting transactions that would otherwise be void or voidable due to a conflict of interest if the board is aware of the conflict and nonetheless "authorizes, approves, or ratifies the . . . transaction . . . by unanimous written consent, provided at least one director so consenting is disinterested, or by affirmative vote of a majority of the disinterested directors, even though the disinterested directors be less than a quorum").

Steven further contends the District Court's grant of summary judgment was inappropriate because "it was impossible to determine without a trial whether the compensation [including the loans] was reasonable and for the 'benefit of the corporation.'" Op. Br. at 19 (quoting N.J. Stat. Ann. § 14A:6-11). Such an approach, however, would undermine the purpose of the business judgment rule—that corporate boards should be free to exercise their discretion unless engaged in fraudulent, self-dealing, or bad faith conduct. As Steven has not sufficiently alleged such conduct, we affirm the District Court's application of the business judgment rule and conclude

9

William and Michael did not breach their duty of loyalty as to the loans and commissions.

We likewise affirm the Court's determination that William and Michael did not breach their duty of care in authorizing these transactions. Under New Jersey law, the duty of care requires that directors "discharge their duties in good faith and act as ordinarily prudent persons would under similar circumstances in like positions." *Francis v. United Jersey Ban*k, 432 A.2d 814, 821 (N.J. 1981). Accordingly, they must "obtain all material information reasonably available to them when making the decision, and act with the requisite care in the discharge of their duties." *Seidman v. Clifton Sav. Bank, S.L.A.*, 2009 WL 2513797, at *10 (N.J. Super. Ct. App. Div. Aug. 12, 2009) (per curiam) (citing *Francis*, 432 A.2d at 821–23). To assess whether a director acted with due care, our "inquiry is not into the substantive decision of the [director], but rather is into the procedures employed by the board in making its determination. In that regard, there is no prescribed procedure that a [director] must follow." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 760 (D.N.J. 2013) (alterations in original) (quoting *PSE&G*, 801 A.2d at 315).

The District Court, in applying the business judgment rule and granting summary judgment, ruled that Steven failed to "identif[y] any facts suggesting that the Board of Directors was anything less than fully informed when it approved the issuance and forgiveness of the loans, as well as the commissions paid to," his brothers. App. at 19. The Court, moreover, held that the Board's annual review and incremental forgiveness of the loans—as well as its decision to set a shared commission of 7.5% for William and

Michael in the "expectation of the large values for" contemplated sales of Products and Metals and to recognize the pair's successful efforts to boost the values of the subsidiaries—satisfied the duty of care. App. at 20–21 (internal quotations omitted). We see no error here and so affirm the judgment of the District Court.

B.

Steven next contends his brothers breached their fiduciary duties of loyalty and care as corporate directors in connection with the sale of Metals to Hummock, which is owned by Michael and his family. The District Court likewise applied the business judgment rule to these claims and entered summary judgment for Appellees. We again affirm.

As for the duty of loyalty, "[d]irectors are considered to be 'interested' if they either appear on both sides of a transaction or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Jurista*, 429 B.R. at 761 (cleaned up). The NJCBA, however, provides that transactions otherwise void or voidable due to a conflict of interest are permitted if

> [t]he fact of the common directorship or interest is disclosed or known to the board[,] . . . and the board . . . authorizes, approves, or ratifies the . . . transaction by unanimous written consent, provided at least one director so consenting is disinterested, or by affirmative vote of a majority of the disinterested directors, even though the disinterested directors be less than a quorum.

N.J. Stat. Ann. § 14A:6-8(1)(b). The District Court concluded there was no violation of the NJBCA because Michael recused himself from the vote to approve the sale; the other directors (William, Klumpp, and Largey) were aware of Michael's relationship with

11

Hummock and still unanimously approved the transaction; Klumpp and Largey were disinterested; and Steven did not allege a dispute of material fact that would show otherwise. Because the undisputed facts indicate that the Board followed the correct procedure to approve the sale of Metals, we agree with the Court's application of the business judgment rule and its conclusion that William and Michael satisfied their duty of loyalty as corporate directors in connection with the transaction.

Steven then argues William and Michael breached their duty of care by selling Metals for a price significantly lower than its value and also that the District Court erred in granting summary judgment because he has shown a material dispute of fact as to the true value of Metals.

As noted above, New Jersey's duty-of-care analysis focuses on "the procedures employed by the board in making its determination." *Jurista,* 492 B.R. at 760. The duty of care requires directors to "discharge their duties in good faith and with that degree of diligence, care and skill which ordinarily prudent people would exercise under similar circumstances in like positions," N.J. Stat. Ann. § 14A:6-14(1), and extends to actions by directors "which may involve or relate to a change or potential change in the control of the corporation,"[4] *id.* § 14A:6-14(4). The brothers' actions met this standard.

---

[4] In this context, "'control' means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the corporation, whether through the ownership of voting shares, by contract or otherwise." N.J. Stat. Ann. § 14A:6-14(4). Accordingly, the sale of Metals, alleged to be Heyco's "only [remaining] substantial asset," App. at 50 (Compl. ¶ 28), is a change-in-control transaction contemplated by § 14A:6-14(4).

12

We note, however, that the Delaware courts—which New Jersey courts often look to on issues of corporate law, *see, e.g.*, *Balsamides v. Protameen Chem. Inc.*, 734 A.2d 721, 732 (N.J. 1999)—apply a heightened standard when analyzing transactions, such as this one, that would result in a sale of substantially all of a company's assets. *See Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 44–45 (Del. 1994). In those circumstances, the company's "directors must focus on one primary objective—to secure the transaction offering the best value reasonably available for the stockholders." *Id.* at 44. To that end, the directors' actions are subject to an enhanced scrutiny test involving "(a) a judicial determination regarding the adequacy of the decisionmaking process employed by the directors, including the information on which the directors based their decision[,] and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing." *Id.* at 45. Though the directors "have the burden of proving that they were adequately informed and acted reasonably," Delaware courts do not question their decision so long as it was "within a range of reasonableness." *Id.*

The parties do not mention Delaware's heightened standard, let alone ask us to apply it. Still, the record suggests it too was met. The evidence indicates the Board was adequately informed and acted reasonably during the sales process. Before starting negotiations with Hummock, it considered an ESOP transaction and engaged in sale discussions with at least three potential purchasers, all of which fell through. In considering the ESOP transaction, the Board commissioned two independent valuations of Metals, which valued the subsidiary between $18 million and $21 million, and

13

between $11.5 million and $14 million, respectively. It then engaged in vigorous negotiations with Hummock, rejecting the firm's first offer and reaching a final sale price that was $2.65 million above that initial offer. And as the District Court correctly noted, the final sale price of $17.65 million was consistent with the independent valuations stemming from the potential ESOP transaction. This record persuades us that the Board was adequately informed and acted reasonably under the circumstances it faced.

We are also unpersuaded by Steven's argument that summary judgment was improper because of a disputed issue of material fact on whether the sale of Metals was "fair and reasonable." Op. Br. at 45. In support, he contends the Board "never took [Metals] out to market" and failed to hire an independent third party to market the company. *Id.* But, as noted above, the Board had sale discussions with three potential buyers and considered an ESOP transaction before turning to Hummock. And Steven cites no case showing William and Michael's duty of care required them to hire an independent third party to help sell Metals. Moreover, because disinterested directors Klumpp and Largey approved the sale, William and Michael did not need to show the transaction was "fair and reasonable" to Heyco. *See* N.J. Stat. Ann. § 14A:6-8(a)–(b) (transaction that would otherwise be void or voidable due to a conflict of interest is permitted if "fair and reasonable" to the company *or* if the board, while aware of the conflict, approves the transaction "by unanimous written consent, provided at least one director so consenting is disinterested, or by affirmative vote of a majority of the disinterested directors, even though the disinterested directors be less than a quorum").

14

Because the Board's decision to sell Metals was procedurally sound, we affirm the

District Court's application of the business judgment rule and grant of summary

judgment rejecting Steven's duty-of-care claim.

IV.

We next consider Steven's claim that his brothers breached their fiduciary duties

as trustees with respect to the sale of Metals to Michael-controlled Hummock.[5]  In

dismissing the trustee counts, the District Court took a practical route suggested by

corporate law: because the Trust Agreement allowed all four Jemison siblings, as

trustees, to vote the Trust's shares and did not require them to act unanimously,[6] William

and Michael did not breach their fiduciary duties as trustees by voting their shares in

favor of the transaction.  However, the relevant legal standard is one of New Jersey trust

law.

Section 3B:31 of the New Jersey Uniform Trust Code ("NJUTC") sets out default

rules governing the conduct of trustees absent conflicting terms in the trust agreement.  It

---

[5] Steven also attempts to revive trustee claims arising from his brothers' actions as to
their loans and commissions.  The District Court held that these claims were not properly
pled, and we agree.  The relevant counts allege only that William and Michael breached
their fiduciary duties as trustees in relation to the sale of Metals.  Because Steven was not
permitted to "amend [his] pleading[] in a summary judgment motion," the District Court
was right to limit the scope of his trustee claims to Metals.  *HFGL Ltd. v. Alex Lyon &
Son Sales Managers & Auctioneers, Inc.*, 700 F. Supp. 2d 681, 683 n.7 (D.N.J. 2010).

[6] The District Court correctly observed that the Trust Agreement did not require the co-
trustees to act unanimously.  Absent a provision requiring unanimity, New Jersey law
allows "[c]o-trustees who are unable to reach a unanimous decision [to] act by majority
decision."  N.J. Stat. Ann. § 3B:31-48(a).

requires trustees to "administer the trust with undivided loyalty to and solely in the best interests of the beneficiaries." N.J. Stat. Ann. § 3B:31-55(a). This duty to act in the beneficiaries' best interest extends to when trustees "vot[e] shares of stock of a corporation or . . . exercis[e] powers of control over similar interests in other forms of enterprise." *Id.* § 3B:31-55(f). Accordingly,

> [a] sale . . . or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with . . . a corporation or other . . . enterprise in which the trustee . . . has an interest that might affect the trustee's judgment.

*Id.* § 3B:31-55(c)(4).[7]

William and Michael concede that the sale of Metals was "presum[ably] . . . affected by conflict" because Michael controlled Hummock, the buyer. *Id.* § 3B:31-55(c). Because the parties concede that § 3B:31-55(c) governs this action, we must determine if they cured the presumed conflict. This presumption could have been rebutted in one of five ways:

> (1) the transaction was authorized by the terms of the trust; (2) the transaction was approved by the court; (3) the beneficiary did not commence a judicial proceeding within the time allowed by [N.J. Stat. Ann.] 3B:31-74; (4) the beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with [N.J. Stat. Ann.] 3B:31-78; or (5) the transaction involves a contract entered into or a claim acquired by the trustee before the person became a trustee.

---

[7] Because "every trustee shall exercise reasonable care to: (1) prevent a co-trustee from committing a breach of trust[,] and (2) compel a co-trustee to redress a breach of trust," if Michael breached his fiduciary duties as trustee by voting the trust's shares to approve the sale of Metals to a company he owned, so too did William in consenting to the sale. N.J. Stat. Ann. § 3B:31-48(g).

*Id.* § 3B:31-55(b).

William and Michael argue only the first way—that the terms of the Trust Agreement, in both its structure and specific language, authorized the sale. They point to the "broad discretionary rights and powers" afforded to the trustees under the Trust Agreement, including "the ability to vote to exercise or sell any rights," and "consent to . . . any contract, . . . sale or action by any corporation." Appellees' Supp. Br. at 3 (quoting App. at 2318).[8] These generalized terms, however, are silent as to the ability of the trustees to vote shares of Heyco, so that Heyco sells its assets to the trustees or entities they control, and so fail to overcome the NJUTC's default rules to "administer the trust with undivided loyalty to . . . the beneficiaries," N.J. Stat. Ann. § 3B:31-55(a), and prohibit sales "presum[ably] . . . affected by a conflict," *id.* at § 3B:31-55(c).

The brothers also argue their conduct was permissible under Article IX of the Trust Agreement, which provides that the trustees "shall not be liable for any loss or depreciation in the value of the trust estate occurring by reason of error of judgment in making any sale . . ., unless willful misconduct shall be proven by affirmative evidence." Appellees' Supp. Br. at 3 (quoting App. at 2320). But this provision offers no such protection here, as its plain language merely shields trustees from liability for "error[s] of judgment" and makes no reference to conflicted transactions. Likewise, our review of

---

[8] Appellees also cite their powers to "sell, mortgage, or otherwise dispose of realty and personalty, publicly, privately, wholly or partly on credit," and "invest and reinvest in assets not ordinarily considered proper investments for trusts, including but not limited to securities offered by new and unseasoned ventures." Appellees' Supp. Br. at 3 (quoting App. at 2318–19). These powers are facially irrelevant to the issue of whether William and Michael could sell trust property to themselves.

17

the Trust Agreement shows no authorization for the sort of deemed-conflicted vote alleged by Steven.

William and Michael contend that because the Trust Agreement (1) did not limit their ability to serve both as co-trustees and as directors of Heyco, (2) allowed all four Jemison siblings, as co-trustees, to vote the Trust's shares, and (3) did not require them to act unanimously, William and Michael had a right to vote their shares in favor of the transaction. This structural argument echoes the reasoning of the District Court. That reasoning, however, does not cure the presumed conflict. William and Michael's ability to serve simultaneously as co-trustees and directors of Heyco, or their general power to vote the Trust's shares, have little bearing on whether they could, as co-trustees, approve the sort of conflicted sale at issue here. The unanimity argument also misses the point: Steven's objections stem not from his rights as a co-trustee but as a beneficiary of the Trust.

Further, the District Court's reliance on *Rosencrans v. Fry*, 91 A.2d 162 (N.J. Super. Ct. Ch. Div. 1952), for its conclusion that the Trust Agreement "essentially sanctioned Defendants' dual roles as Trustees of the Jemison Family Trust and Directors of Heyco," App. at 33, is misplaced. The court there held that a trustee who owned shares of a company for which he also served as an executive did not breach his fiduciary duties by serving in both roles and purchasing company shares from the trust because (1) the testator knew the trustee was an executive of the company when he created the trust instrument, and (2) the trust instrument specified the trustee had an option to buy the shares. 91 A.2d at 164–69. *Rosencrans* does not fit here because the Trust Agreement,

18

unlike the instrument in that case, did not explicitly authorize trustees to purchase property from the trust.  Though the District Court was correct that New Jersey law and the Trust Agreement generally allowed William and Michael to vote the shares of the Trust and hold positions on Heyco's Board, its *Rosencrans* analysis does not extend to the specific circumstances of William and Michael's exercising those rights to approve a conflicted transaction.

Tempting as it is, Steven cannot be faulted for trying to "side-step the business judgment rule in arguing that [William and Michael] breached their duties as trustees." App. at 34.  To the contrary, in New Jersey trustees are subject to *stricter* fiduciary duties than corporate directors.  *See In re Koretzky's Estate*, 86 A.2d 238, 249 (N.J. 1951) ("The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty and he is not permitted to place himself in a position where it would be for his own benefit to violate that duty."); *see also* Restatement (Third) of Trusts § 78 cmt. b ("The fiduciary duty of undivided loyalty in the trust context . . . is particularly intense so that, in most circumstances, its prohibitions are absolute for prophylactic reasons.").  Moreover, "the rule that fiduciaries are not to deal in their own behalf with respect to matters involved in their trusts operates irrespectively of the good faith or bad faith of such dealing."  *Koretzky*, 86 A.2d at 249 (quoting *In re Kline*, 59 A.2d 14 (N.J. Ct. Err. & App.  1948) (per curiam)).  Thus William and Michael, as trustees, could not cure the conflict in the same way they did as corporate directors.

Because the sale of Metals to an entity owned by Michael and his family was presumed conflicted under New Jersey trust law, and that presumption was not

19

successfully rebutted, summary judgment for William and Michael is not an option here. We thus, reluctantly, reverse and remand the Court's grant of summary judgment on this ground.

V.

Finally, Steven challenges the District Court's disposition of his unjust enrichment claim, which the Court determined was "duplicative of his claims for breach of fiduciary duty." App. at 35. To sustain this claim under New Jersey law, Steven had to show that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).

The Court entered summary judgment for William and Michael after determining that the challenged actions did not exceed their authority as directors and trustees, such that there was "no material dispute of fact with respect to whether [they] were entitled to the renumeration they received." App. at 35. We agree with its ruling as to their actions as corporate directors. And to the extent that Steven's unjust enrichment claim is based on his brothers' actions as trustees, it fails as well because the parties' relationship is governed by the Trust Agreement, and Steven has not alleged that agreement is void or sought rescission. *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties").

20

\*     \*     \*     \*     \*

For these reasons, we affirm in part the District Court's grant of summary

judgment for Appellees and reverse in part and remand for further proceedings.

\*     \*     \*     \*     \*

PATRICIA S. DODSZUWEIT

CLERK

TELPHONE NO.
215-597-2995

OFFICE OF THE CLERK



UNITED STATES COURT OF APPEALS
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790
Website: www.ca3.uscourts.gov

July 25, 2022

Mr. William T. Walsh
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building and United States Courthouse
402 East State Street
Trenton, NJ 08608

RE: Steven Jemison v. Michael Jemison, et al
Case Number: 21-1805
District Court Case Number: 3-17-cv-13571

Dear Mr. Walsh:

Enclosed herewith is the certified judgment together with copy of the opinion in the above-captioned case. The certified judgment is issued in lieu of a formal mandate and is to be treated in all respects as a mandate.

Counsel are advised of the issuance of the mandate by copy of this letter. The certified judgment is also enclosed showing costs taxed, if any.

Very Truly Yours,
s/ Patricia S. Dodszuweit
Clerk

By: s/ Desiree
Case Manager
Direct Dial: 267-299-4252

cc:     Paul S. Doherty,III, Esq.
        Joanna P. Piorek, Esq.
        Jeremy B. Stein, Esq.